NUMBER 13-99-667-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________ 



EDWARD POWELL , Appellant, 



v.

 
THE STATE OF TEXAS , Appellee. 

___________________________________________________________________ 

On appeal from the 339th District Court

of Harris County, Texas.

___________________________________________________________________ 



O P I N I O N

 
Before Chief Justice Valdez and Justices Rodriguez and Hill(1)

Opinion by Justice Hill

 

Edward Powell appeals his conviction by a jury of the offense of delivery of a controlled substance, methamphetamine,
weighing more than one but less than four grams. Finding that Powell had previously been convicted of the offense of
burglary of a habitation, the jury assessed punishment at twenty years in the Texas Department of Criminal Justice,
Institutional Division. In a single point of error, Powell contends that the evidence is legally insufficient to support a
finding that he delivered the methamphetamine in question. 

We affirm because the evidence is sufficient to support the conviction. 

In evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable
doubt.See Ovalle v. State, 13 S.W.3d 774, 777 (Tex. Crim. App. 2000). Alan Heinle testified that on October 23,
1998, he was working as an undercover narcotics officer for the Houston Police Department, conducting an
investigation regarding buying methamphetamine. He indicated that when he told an individual named Michael Stowe
that he wanted to buy an ounce of methamphetamine and a sheet of LSD, Stowe told him that he could get it from
someone else and that it would cost $850. 

Heinle stated that Stowe got in the car with him and instructed him to drive to Houston's Galleria Mall. Heinle
testified that Stowe told him that they were going to meet a white male at the food court. Heinle indicated that after a
45-minute wait, Stowe called someone by cell phone, wanting to know where they were. Heinle stated that after
getting off the phone, Stowe said they were to go to a restaurant located just outside the mall on the service road.
Heinle said that when they pulled up at the restaurant, Stowe pointed out a Honda Accord, saying, "That's the car right
there," and "That's the guy's car." Heinle testified that he parked about 30 yards away from the car and they waited. 

According to Heinle, while they waited Stowe made a phone call and was told that the guy was coming from the mall
and would be there in a little while. He said that fifteen minutes later someone called and told him to tell Stowe they
were stuck in traffic and would be there shortly. Heinle indicated that while he was sitting there with Stowe a white
Corvette drove up, occupied by a white male driver and a black male passenger. Heinle related that the black male got
out, the Corvette drove off, and the black male started walking toward the Accord Stowe had previously identified.
Then, according to Heinle, Stowe said, "That's him," and they started walking toward the Accord. 

Heinle testified that once they arrived at the Accord, the black male got in the driver's seat and Stowe got in the
passenger seat. Heinle stated that he knelt down next to the driver's door of the car. He indicated that he asked the
black male "if he had any shit for me," which, in common street slang, means drugs or narcotics. He said the black
male pulled out a package of cigarettes and pulled out a little baggie from it. Heinle stated that he recognized the light
brownish-colored clumpy material contained in the baggie as methamphetamine. Heinle related that the black male
had the baggie in his hand on his lap. 

Heinle testified that when the black male asked him if he had the money, he tapped his pocket and told him that he did.
Heinle identified Powell as the black male who showed him the methamphetamine. According to Heinle, when Powell
told him to get in the back seat, he said he had to go get his scale and walked toward his car. He indicated that he gave
an arrest signal while he was walking towards his car. Heinle stated that he got to his car and back and knelt down by
the open driver's door before the arrest team arrived. Heinle said that he was away from the car no more than a minute. 

Heinle testified that he did not recover the methamphetamine from Powell or from the Accord, but that he did receive
it from his sergeant, whom he believed received it from the arrest team. Heinle identified State's exhibit 2 as the same
bag that was pulled out of the cigarette pack and the same methamphetamine that was given to him by his sergeant. He
stated that after his sergeant gave it to him, it was under his care, custody, and control until he turned it over to the
crime lab. He indicated that he had brought it to court from the crime lab and it was in a substantially similar condition
as it had been on October 23, 1998. 

Heinle testified that the only way he had of knowing that State's exhibit 2 was the same bag that was recovered at the
time of Powell's arrest was the fact that it went through the normal chain of custody. Just prior to that testimony, he had
stated that when drugs are in the custody of the Houston Police Department they stay in an envelope that is sealed and
initialed. He further testified that even though the bag did not have his initials or any identifying marks on it, according
to his recollection he could tell the jury with 100% certainty that it was the same bag. Heinle indicated that he had
seen the baggie of methamphetamine come out of the cigarette pack, and that was where he believed it was recovered
from. He said he never saw the cigarette pack in Stowe's possession, but that it was possible he could have had the
cigarette pack the whole time. 

Officer Tim Harry of the Houston Police Department testified that he arrested Stowe, a passenger in a white car, and
that when he got out of the car a package of cigarettes Stowe had on his left leg, or in his hand, closest to the driver,
fell out. He said that there was a bag of powdery substance inside the cigarettes that had fallen partially out. He
indicated that he recovered the package of powdery substance and immediately gave it to a sergeant at the scene. He
stated that State's exhibit 2 did not appear to be tampered with in any way, and that it appeared to be substantially the
same or similar as it was on October 23, 1998. Harry acknowledged that he had never seen Powell with State's exhibit
2. 

Tom Calabro, a sergeant with the narcotics squad of the Houston Police Department, testified that he was on duty on
October 23, 1998, in that capacity. Calabro said he was the squad supervisor and part of the arrest team. He said he
took possession of State's exhibit 2 from Officer Harry after the arrest. He said it was in his care, custody, and control
from the time he got it from Officer Harry until he gave it to Officer Heinle. Calabro verified that the original target of
the investigation was Stowe and that State's exhibit 2 was retrieved from Stowe. 

K. K. Alexander, a supervisor and chemist with the Houston Police Crime Laboratory, testified that he tested the
substance contained in State's exhibit 2, and that it tested positive for methamphetamine. He said it weighed more than
one, but less than four, grams. Alexander acknowledged that one of the lab employees had the substance in her office
for almost two weeks prior to testing it, but that it was in her locked care and custody, and she was the only person who
had access to her work area. 

Powell testified that he had seen the pack of cigarettes containing the baggie with the methamphetamine in Michael
Stowe's possession. He denied knowing what was in it. 

Michael Dudik, a friend of Powell who had previously been convicted of auto theft, testified of spending time
shopping with Powell prior to the arrest. He said that it was at his own suggestion he met Powell in the Dillard's
parking lot. Dudik indicated that from there they went to Sharpstown Mall before he returned Powell to his car in the
Dillard's lot. He stated that they planned to go to a basketball game later in the evening. Dudik testified that he took
Powell to his car instead of directly to the game because Powell had told him that he had to drop someone off. He
acknowledged that he did not know whether Powell was in possession of a pack of cigarettes. 

Officer Heinle, having been recalled as a witness, testified that he was sure that it was Powell, not Stowe, who pulled
out the methamphetamine and that it was Powell, not Stowe, who asked him whether he had the money. He said that
at the time he was kneeling down next to Powell with his face only two to three feet from him. 

We hold that the evidence is sufficient to support Powell's conviction. Powell places primary reliance on the case
ofJones v. State, 538 S.W.2d 113 (Tex. Crim. App. 1976). We find that case to be distinguishable. In Jones, a police
officer saw the defendant throw a balloon from the driver's window of a car that he was operating. Id. at 114. When the
officer seized the balloon, he found it contained a substance that he thought to be heroin. Id. He initialed the balloon,
took the defendant to the police station, and delivered the balloon to a police chemist. Id. The chemist at trial identified
a balloon as being one that was delivered to him by the police officer. Id. He said that he determined that the balloon
contained heroin. Id. The officer did not identify the balloon tested by the chemist as being the balloon that he had seen
the defendant throw from the driver's window. Id. The court held that the evidence was insufficient because there was
no showing that the balloon identified by the chemist was the same one the officer recovered after seeing the defendant
throw it out the window. Id. In this case, Officer Heinle positively identified the substance tested by the police chemist
as the substance he saw in Powell's possession, which was later recovered from Stowe at the scene. Powell did not
indicate at trial that there was some other cigarette pack in the car other than the one the officer saw, only that the
officer was mistaken in saying that he, not Stowe, had the pack in his possession and in saying that he had asked if the
officer had the money to pay for the drug. We overrule Powell's sole point of error. 

 The judgment is affirmed. 

______________________________ 

JOHN HILL, 

Retired Justice 



Do not publish . 

Tex. R. App. P. 47.3(b). 



Opinion delivered and filed 

this 8th day of February, 2001. 

 

1. Retired Justice John Hill assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to TEX.
GOV'T CODE ANN. § 74.003 (Vernon 1988)